[No. 60791-5. En Banc. October 6, 1994.]

SNOHOMISH COUNTY, ET AL, *Respondents*, v. ARCHIE ANDERSON, ET AL, *Defendants*, DONALD L. GRAHAM, ET AL, *Appellants*.

*Robert C. Rowley* and *Patterson, Rowley & Schwimmer, Inc., P.S.; Douglas J. Smith* and *Smith Law Firm,* for appellants.

*Thomas Herrick Robertson, Deputy Prosecuting Attorney,* for respondents.

*Christine O. Gregoire, Attorney General,* and *Tommy Prud'homme, Assistant,* for State.

UTTER, J. — This action arises from an attempt by Snohomish County citizens to subject a Snohomish County ordinance to a referendum. The Snohomish County Council (County or Council) commenced an action against the citizens seeking and successfully securing a declaratory judgment the ordinance was not subject to a referendum. The citizens appeal two trial court rulings collectively granting the declaratory judgment and rejecting all but one of their counterclaims. The first ruling dismissed three of the counterclaims, holding the citizens lacked standing and the issues were neither justiciable nor ripe for review. The second ruling granted summary judgment to the County on its claim for declaratory relief as well as on all but one of the remaining counterclaims. We accepted accelerated review of the trial court's granting of declaratory relief to Snohomish County and disposed of that issue in favor of the County in *Snohomish Cy. v. Anderson*, 123 Wn.2d 151, 868 P.2d 116 (1994). The trial court's disposition of several remaining issues is affirmed on this appeal.

RCW 36.70A.210 requires various counties, including Snohomish County, to adopt a countywide planning policy. This requirement is part of the State's Growth Management Act (GMA) and provides:

> The legislative authority of a county that plans under RCW 36.70A.040 shall adopt a county-wide planning policy in cooperation with the cities located in whole or in part within the county . . ..

RCW 36.70A.210(2). A countywide planning policy is defined as:

> a written policy statement or statements used solely for establishing a county-wide framework from which county and city comprehensive plans are developed and adopted . . .

RCW 36.70A.210(1). In early 1993, pursuant to this statutory obligation, the Council adopted a countywide planning policy in the form of Snohomish County Ordinance 93-004. Shortly thereafter, several Snohomish County citizens signed a petition seeking to subject the ordinance to a referendum and delivered the petition to the Snohomish County Auditor. The County responded by seeking a declaratory judgment that the ordinance was not subject to a referendum. The Defendants answered the claim and filed several counterclaims.

On June 22, 1993, Judge Joanne Alumbaugh granted a motion by the County to dismiss some of the counterclaims for lack of justiciability, lack of ripeness, and lack of standing[1] and denied two motions for reconsideration. On July 26, 1993, Judge William Howard granted the County's motion for summary judgment on its claim for declaratory relief and on several of the remaining counterclaims.[2]

We accepted accelerated review of Judge Howard's finding that ordinance 93-004 was not subject to a referendum and affirmed that component of his decision in an order dated October 7, 1993, and an opinion filed in January 1994. *Anderson.* We now review the remaining challenges.

The citizens ask us to consider whether the trial court erred by: (1) refusing to reach the merits of the citizens' "affirmative defense" alleging RCW 36.70A.210 is an unconstitutional delegation of power to the County; (2) dismissing their counterclaim that the 1991 amendment to the GMA is unconstitutional; (3) dismissing their counterclaim that ordinance 93-004 is unconstitutional; (4) ruling in favor of the County on their counterclaim that writs of mandamus should have been issued; (5) ruling in favor of the County on their claim Snohomish County improperly expended public funds; (6) ruling in favor of the County on their counterclaim Snohomish County violated their civil rights; or (7) granting Snohomish County's motion for summary judgment on the

---

[1] Clerk's Papers, at 268-70 (corrected order); Clerk's Papers, at 317-18 (original order).

[2] Clerk's Papers, at 21-28.

issue whether ordinance 93-004 is subject to a referendum. We conclude none of these actions constitutes reversible error.

As a preliminary matter we note that after briefing was completed by all parties the County moved to submit additional evidence reflecting the fact a council member had resigned. We deny the motion. In addition, Appellant Morris's motion to strike an argument contained in the County's response brief, see Reply Br. of Appellants Husmann, Labish, Pesznecker and Morris, at 26, is denied. *See* RAP 17.4(d) (party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits). The denial of Morris's motion in any case is inconsequential since we do not reach the challenged argument.

# I

■ The citizens seek to reverse the trial court's refusal to reach the merits of one of their "affirmative defenses" to the County's complaint for a declaratory judgment that ordinance 93-004 was not subject to referendum. See Am. Joint Br. of Appellants, at 15-19. Their contention that the trial court erred by refusing to determine whether RCW 36.70A.210 constitutes an unconstitutional delegation of power to the County is a contention without merit. An affirmative defense is a "matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it". Black's Law Dictionary 60 (6th ed. 1990).

The citizens argue that the unconstitutionality of a statute relied upon by a plaintiff provides a valid defense to the application of the statute. However, the case cited for this proposition is not controlling. In *State ex rel. Eastvold v. Yelle*, 46 Wn.2d 166, 279 P.2d 645 (1955), the Attorney General sought a warrant in a condemnation proceeding. The statute pursuant to which the warrant was sought was deemed unconstitutional because it would have permitted condemnation without a judicial determination as to just compensation. The warrant seeking condemnation without judicial determination of just compensation was therefore

denied. Thus, in *Eastvold,* there was a direct correlation between the relief sought and the defense asserted. In contrast, there is no such direct correlation between the affirmative defense asserted by the citizens and the issue whether ordinance 93-004 is subject to a referendum. Proof that RCW 36.70A.210 is an unconstitutional delegation of power to the County in no way secures or guarantees the citizens' right to subject the ordinance to a referendum. The trial court did not err by declining to reach the merits of this "defense".

## II

The citizens also claim the trial court erred by dismissing their counterclaim which asserted that the 1991 amendment to the GMA is unconstitutional. On appeal, they offer three reasons in support of this contention. First, they assert the amendment violates Const. art. 11, § 11[3] because it gives counties the power to impose their land-use policy decisions upon cities. We decline to review this claim since it was not made as part of the original claim of unconstitutionality. *State v. Riley,* 121 Wn.2d 22, 30, 846 P.2d 1365 (1993) (an issue not briefed or argued in the trial court will not be considered on appeal).

Second, the citizens argue the amendment violates Const. art. 2, § 1 (amend. 72)[4] because it delegates unfettered discretion to the Governor to impose sanctions on cities which do not comply with certain mandates in the statute. Am. Joint Br. of Appellants, at 39-41. Finally, they claim the amendment violates Const. art. 2, § 19[5] because SHB 1025, 52d Legislature (1991), bore the title "An Act Relating to Growth Strategies" but in fact affected vital revenue acts. Am. Joint Br. of Appellants, at 41-43. The trial court rejected

[3]Const. art. 11, § 11 provides: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws".

[4]Const. art. 2, § 1 (amend. 72) provides in pertinent part: "The legislative authority of the state of Washington shall be vested in the legislature . . .".

[5]Const. art. 2, § 19 provides: "No bill shall embrace more than one subject, and that shall be expressed in the title".

these latter two contentions because it held that the citizens lacked standing to make these challenges to the constitutionality of the statute and that these claims were not justiciable or ripe.

 A challenge to the constitutionality of a statute by means of a declaratory judgment must be justiciable before it will be considered. *See, e.g., State ex rel. Graham v. Northshore Sch. Dist. 417,* 99 Wn.2d 232, 246, 662 P.2d 38 (1983) (an actual dispute must exist). For a declaratory judgment controversy to be justiciable, there must exist:

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*DiNino v. State,* 102 Wn.2d 327, 330-31, 684 P.2d 1297 (1984) (quoting *Clallam Cy. Deputy Sheriff's Guild v. Board of Clallam Cy. Comm'rs,* 92 Wn.2d 844, 848, 601 P.2d 943 (1979) (quoting *Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 489, 585 P.2d 71 (1978))).

The citizens' challenge under Const. art. 2, § 1 (amend. 72) is not justiciable because there is no actual, present and existing dispute, or the mature seeds of one. None of the sanctions provisions are alleged to have been implemented. Thus, the claim is a possible, dormant, hypothetical, speculative or moot disagreement, and the trial court did not err by dismissing the claim. Similarly, their claim under Const. art. 2, § 19 is not justiciable because they have not alleged that any entity which would have benefited from various sources of revenue have in fact been denied that revenue. They therefore have not alleged an actual, present and existing dispute, or the mature seeds of one, and the trial court was correct to dismiss the claim as well.

The citizens claim that in the absence of justiciability under the above described 4-point test, sufficient public interest may support justiciability of the claim. The presence

of issues of "broad overriding import" may persuade a court to exercise its discretion in favor of reaching an issue which is otherwise not justiciable. *See, e.g., DiNino v. State,* 102 Wn.2d 327, 331, 684 P.2d 1297 (1984). However, the existence of a statute implicating the public interest is not sufficient to support the examination of an issue which is not otherwise justiciable. Rather, in deciding whether to review such an issue, courts examine not only the public interest which is represented by the subject matter of the challenged statute, but the *extent to which public interest would be enhanced by reviewing the case. Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 490, 585 P.2d 71 (1978) ("Where the question is one of great public interest . . . and where it appears that an opinion of the court will be beneficial to the public and to other branches of the government, the court may exercise its discretion and render a declaratory judgment to resolve a question of constitutional interpretation"); *Leonard v. Bothell,* 87 Wn.2d 847, 557 P.2d 1306 (1976); *Sorenson v. Bellingham,* 80 Wn.2d 547, 496 P.2d 512 (1972) (one consideration in determining the public interest implicated is the desirability of an authoritative determination for future guidance of public officers).

The cities of Lynnwood and Edmonds are currently engaged in similar challenges to the 1991 amendment.[6] Those cities are in a better position to litigate these issues since they are the entities whose land-use powers are allegedly being compromised. Moreover, even were county-wide planning policies rendered void, cities and counties would still be required to plan and to plan consistently. *See* RCW 36.70A.100. The benefit of an authoritative determination for future guidance is therefore minimal at this time. Based on these considerations and the discretionary nature of the trial court's decision, *see Seattle Sch. Dist. 1,* the trial court did not err in declining to review the Const. art. 2, § 1 (amend. 72) and Const. art. 2, § 19 challenges to the 1991 amendment. We affirm the trial court's dismissal of the challenge to the constitutionality of the amendment to the

---

[6]See Clerk's Papers, at 337-49.

GMA and need not reach the issue whether the citizens have standing.[7]

## III

A third challenge is directed to the trial court's dismissal of the counterclaim that ordinance 93-004 is ultra vires. Only one citizen explicitly and specifically presented this claim.[8] The trial court did not reach the merits of this claim because it concluded that Morris, the citizen who raised the issue, lacked standing, and that the claim was neither justiciable nor ripe. The citizens argue the trial court improperly dismissed this counterclaim because the counterclaim was not briefed, argued, or the subject of a motion to dismiss at the time it was dismissed. The County asserts that Morris's attorney stipulated to defending the counterclaim: "I will stipulate, on Mr. Morris's behalf, and we'll do it in writing, if this in court stipulation is not sufficient, but given the added time, Mr. Morris will defend this motion next Thursday in Snohomish County." Report of Proceedings (May 15, 1993), at 16-17. Because Morris shared other counterclaims in common with the citizens whose claims *were* the subject of a motion to dismiss, however, it is at best unclear whether Morris's attorney agreed to defend this particular counterclaim which Morris did *not* share with the other Defendants. The trial court therefore erred in dismissing this counterclaim.

The error was harmless, however. Because the ordinance does not establish, dissolve, or modify any legal rights with respect to the citizens, *Anderson*, and because RCW 36.70A.210(1) provides: "[n]othing in this section shall be construed to alter the land-use powers of cities", Morris could not have presented a justiciable issue, and we affirm

---

[7]We note, contrary to the citizens' contentions, that it is fully consistent to recognize that the GMA is a statute implicating matters of great public and statewide interest, *Anderson*, and also refuse to hold that the trial court erred by failing to consider the challenge to the 1991 amendment to be a "question . . . of great public interest . . . [for which] it appears that an opinion of the court will be beneficial to the public and to other branches of the government", *see Seattle Sch. Dist. 1*, 90 Wn.2d at 490.

[8]Clerk's Papers, at 377.

the trial court's dismissal of the counterclaim that ordinance 93-004 was unconstitutional and ultra vires.

## IV ·

■ The citizens also contest the trial court's entry of summary judgment in favor of Snohomish County on the merits of three of their counterclaims. The civil rules permit summary judgment only if there is no genuine issue as to any material fact. CR 56(c). When reviewing an order of summary judgment, an appellate court engages in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 787 P.2d 562 (1990). In deciding a motion for summary judgment, the court must construe all the facts and reasonable inferences in favor of the nonmoving party; the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Turngren v. King Cy.*, 104 Wn.2d 293, 705 P.2d 258 (1985).

One of the decisions contested is the trial court's disposition of the citizens' claim pursuant to 42 U.S.C. § 1983. On appeal, the citizens allege the County violated the following alleged civil rights: their right to petition for referendum pursuant to the county charter; their federal and state constitutional rights to petition government; and their right to individual privacy.

■ To state a violation of 42 U.S.C. § 1983, a party must show he or she has been deprived of a protected right by a person acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. This provision has been consistently interpreted to permit a cause of action only for violation of the *federal* constitution or other *federal* laws; violation of state laws will not alone support a violation of 42 U.S.C. § 1983.

*Stiltner v. Rhay*, 322 F.2d 314 (9th Cir. 1963); *see also Ortega v. Ragen*, 216 F.2d 561 (7th Cir. 1954), *cert. denied*, 349 U.S. 940, 99 L. Ed. 1268, 75 S. Ct. 786 (1955).

■ Here, the citizens have not shown how a right to petition for referendum, guaranteed by the *county charter*, supports a violation of 42 U.S.C. § 1983. In addition, the citizens do not cite any federal provision guaranteeing their alleged right to petition government through a referendum at the local level. *See also Ruano v. Spellman*, 81 Wn.2d 820, 823, 505 P.2d 447 (1973) ("The right to act directly through either the initiative or referendum is not an inherent power of the people"). Finally, with respect to the citizens' claim that Snohomish County violated their civil rights by violating their rights to privacy, this is a new allegation on appeal, and we decline to address the merits of this contention. *State v. Riley*, 121 Wn.2d 22, 30, 846 P.2d 1365 (1993) (an issue not briefed or argued in the trial court will not be considered on appeal).

Because the citizens have failed to show there was a genuine issue of material fact implicated in their civil rights counterclaim, and because the citizens have not described a claim upon which relief can be granted, we affirm the trial court's entry of summary judgment in favor of the County on the counterclaim under 42 U.S.C. § 1983.

V

The citizens also challenge the trial court's disposition of their improper expenditure of public money. However, they acknowledge that if we do not find the ordinance invalid, this claim is without merit. Because we find the ordinance valid, we affirm Judge Howard's ruling with respect to this claim.

VI

The citizens also contest the disposition of their counterclaim for writs of mandamus to compel the official in charge of holding elections and the Prosecuting Attorney for Snohomish County to process their referendum petitions. Here again they acknowledge that if we do not find the ordinance to be invalid, this claim is also without merit. Because we do

not find the ordinance invalid, we affirm Judge Howard's ruling with respect to this claim as well.

## VII

Finally, the citizens appear to argue again that the trial court's granting Snohomish County's motion for summary judgment on the issue whether ordinance 93-004 is subject to a referendum was in error. We already decided this issue in *Anderson* when we affirmed the declaratory judgment of the trial court that ordinance 93-004 was not subject to a referendum. For the reasons enumerated therein, the trial court did not err by entering summary judgment in favor of Snohomish County.

The trial court orders are affirmed.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

Reconsideration denied January 3, 1995.